918 P.2d 370

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Gordon HOUSE, Defendant–Appellant.**

No. 16638.

Court of Appeals of New Mexico.

March 28, 1996.

Certiorari Denied May 29, 1996.

Tom Udall, Attorney General, Daniel F. Haft, Ass't Attorney General, Santa Fe, for Appellee.

Ray Twohig, Ray Twohig, P.C., Albuquerque, for Appellant.

## OPINION

PICKARD, Judge.

1. The trial court denied Defendant's request for bail pending appeal of his convictions for driving while intoxicated (DWI) (second offense), reckless driving, great bodily injury by vehicle (alternatively by reckless driving or DWI), and four counts of vehicular homicide (alternatively by reckless driving or DWI). Defendant has filed a motion in this Court to review conditions of release pursuant to SCRA 1986, 12–205(B) (Repl.1992). This case presents us with an opportunity to determine the constitutionality of NMSA 1978, Section 31–11–1(C) (Cum.Supp.1995), the appeal-bond statute, and to decide how it should be interpreted.

*The Appeal–Bond Statute and the Appeal–Bond Rule*

2. Section 31–11–1(C) provides as follows:

If a defendant is convicted of a noncapital offense other than a violent offense [as defined in subsection D of this statute] and is sentenced to a term of imprisonment not suspended in whole, he shall not be entitled to release pending appeal unless the court finds:

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if releases; and

(2) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

3. SCRA 1986, 5–402(C) (Repl.1992) of the District Court Rules of Criminal Procedure states in pertinent part:

**Release after sentencing.** After imposition of a judgment and sentence, the court, upon motion of the defendant, may establish conditions of release pending appeal or a motion for new trial. The court may utilize the criteria listed in Paragraph B of Rule 5–401, and may also consider the fact of defendant's conviction and the length of sentence imposed. The defen-

dant shall be detained unless the district court after a hearing determines that the defendant is not likely to flee and does not pose a danger to the safety of any other person or the community if released.

4. District Court Judge Blackmer found by clear and convincing evidence that Defendant is not likely to flee or pose a danger to the safety of any other person or the community if he is released pending appeal. Judge Blackmer also found that Defendant's appeal is not for the purpose of delay. These findings satisfy all but one element of Section 31–11–1(C) and SCRA 5–402(C)—the requirement of Section 31–11–1(C)(2) that the trial court find that the appeal raises a substantial question of law or fact likely to result in reversal or an order for a new trial. Judge Blackmer's finding against Defendant on this component was the sole reason for his decision to deny bail pending appeal.

█ 5. Defendant contends that Section 31–11–1(C)(2) is not applicable because it unconstitutionally intrudes upon the judicial branch's power to prescribe rules of judicial procedure. See generally N.M. Const. art. III, § 1 (separation of powers of the government); State ex rel. Anaya v. McBride, 88 N.M. 244, 246, 539 P.2d 1006, 1008 (1975) ("Certainly statutes purporting to regulate practice and procedure in the courts cannot be made binding, for the constitutional power is vested exclusively in this court."). Defendant argues that SCRA 5–402(C) alone is controlling and that he must be released pending appeal because Judge Blackmer found that he met the requirements of the rule promulgated by our Supreme Court. We analyze this issue mindful of Defendant's burden to demonstrate the invalidity of the statute. See State v. Castleman, 116 N.M. 467, 470, 863 P.2d 1088, 1091 (Ct.App.), cert. quashed, 115 N.M. 796, 858 P.2d 1275 (1993).

█ 6. In 1988, New Mexico voters removed entirely any constitutional right to post-conviction bail through a constitutional amendment which provides that "[a]ll persons shall, before conviction be bailable by sufficient sureties, except for capital offenses." N.M. Const. art. II, § 13 (emphasis added). That same year the legislature enacted Section 31–11–1 in its present form,

denying the right to bail pending appeal for those convicted of certain offenses and granting a limited and conditional right to bail for those convicted of other offenses, including the offenses involved in this case. Section 31–11–1(C) is not inconsistent with Article II, Section 13. In fact, the legislative creation of that limited and conditional right to bail appears to be a new right, not provided under the New Mexico Constitution. Thus, the statute appears substantive in nature. See Cruz v. Liberty Mut. Ins. Co., 119 N.M. 301, 303, 889 P.2d 1223, 1225 (1995) (citing Gray v. Armijo, 70 N.M. 245, 248, 372 P.2d 821, 823 (1962)). It is not the province of New Mexico courts to invalidate substantive policy choices made by the legislature. Eturriaga v. Valdez, 109 N.M. 205, 209, 784 P.2d 24, 28 (1989).

7. Defendant relies on Justice Montgomery's dissent in Maples v. State, 110 N.M. 34, 791 P.2d 788 (1990), for the proposition that the issue as to whether a statute or a court rule should prevail "should be decided by referring to the purpose of the particular statute and the extent of intrusion upon the courts' ability to discharge their functions, not by categorizing the rule as either 'substantive' or 'procedural.'" Id. at 39, 791 P.2d at 793 (Montgomery, J., dissenting). For the following reasons, we believe the appeal-bond statute does not unduly burden or interfere with our courts' responsibilities, and thus, even under Justice Montgomery's analysis, the statute is constitutional.

8. Defendant asserts that the purpose of bail is (1) to preserve the court's jurisdiction over a defendant and (2) to assure that a fair process is followed during the course of the appeal. We agree that the purposes behind setting bail include assurance that the defendant will appear. See State v. Montoya, 116 N.M. 297, 307–08, 861 P.2d 978, 988–89 (Ct. App.), cert. denied, 116 N.M. 364, 862 P.2d 1223 (1993). However, Section 31–11–1(C), by limiting those situations in which a trial court may even consider setting bail pending appeal, is designed to accomplish the additional goal of preserving the effectiveness and efficiency of the criminal justice system in the face of convicted defendants' efforts to delay statutory punishment. Cf. State v.

*Gonzales,* 105 N.M. 238, 243, 731 P.2d 381, 386 (Ct.App.1986) ("There is a presumption of rectitude and regularity in the proceedings below."), *cert. quashed,* 105 N.M. 211, 730 P.2d 1193 (1987); *In re Estate of Martinez,* 96 N.M. 619, 621, 633 P.2d 727, 729 (Ct.App.) ("justice delayed is justice denied"), *cert. denied,* 97 N.M. 140, 637 P.2d 571 (1981).

9. That goal of effective and efficient administration of justice is one which the judicial branch typically pursues. *See generally State v. Jones,* 39 N.M. 395, 398, 48 P.2d 403, 405 (1935) (due administration of justice means due conviction and punishment or due acquittal and discharge as justice may require plus the due course of proceedings); *State v. Bourland,* 116 N.M. 349, 350–51, 862 P.2d 457, 458–59 (Ct.App.) (because plea bargains involve the integrity of the criminal justice system and thus involve the court, neither the state nor the defendant should rely on the bargain until the court has approved it), *cert. denied,* 116 N.M. 364, 862 P.2d 1223 (1993). In our view, Section 31–11–1(C)(2) poses no threat to New Mexico courts' abilities to carry out their constitutional duties in that regard. In fact, additional preliminary attention to the merits of an appeal may enhance our courts' ability to perform their essential functions. *Cf. State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 160–63, 315 P.2d 223, 226–27 (1957) (statute limiting amount of fine for contempt without a jury substantially impaired the power of the courts to punish for contempt).

10. In sum, we hold that Section 31–11–1(C)(2) does not violate the separation of powers. We turn next to the interpretation and application of that statute.

*Interpretation of Section 31–11–1(C)(2)*

11. No reported New Mexico case has interpreted the "substantial question" element of Section 30–11–1(C)(2). However, the language of subsection (C), which is part of the amendments enacted by the legislature in 1988, is practically identical to that contained in 18 U.S.C.A. § 3143(b) (West 1985 & Supp.1995). Therefore, cases construing the federal statute are persuasive authority. *See State v. Anderson,* 110 N.M. 382, 383, 796 P.2d 603, 604 (Ct.App.), *cert. denied,* 109 N.M. 232, 784 P.2d 419 (1989).

12. Defendant has urged us to interpret "substantial question" in light of the analysis announced in *United States v. Miller,* 753 F.2d 19, 23 (3d Cir.1985) (A substantial question is "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful."). The Third Circuit itself refined the *Miller* analysis to make it clear that an issue does not become substantial simply because there exists no controlling precedent. *See United States v. Smith,* 793 F.2d 85, 88–90 (3d Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 832 (1987). The Third Circuit now uses a historically-based "fairly debatable" interpretation of the term "substantial." *Id.* at 89.

13. The Tenth Circuit considered the *Miller* approach in *United States v. Affleck,* 765 F.2d 944, 952–53 (10th Cir.1985), and chose to apply a "somewhat stricter" interpretation than *Miller* of what constitutes a substantial question of law or fact in view of the intent of the Federal Bail Reform Act to make the standards for granting appeal more stringent than the prior act, under which bail was denied only if the appeal was "frivolous." Our Section 31–11–1(C), when compared with SCRA 5–402(C), which has been in effect since 1975, and when compared with Article II, Section 13 of our Constitution prior to the 1988 amendment, also manifests a tightening of standards.

14. We agree with the Tenth Circuit that " 'a "substantial question" is one of more substance than would be necessary to a finding that it was not frivolous.' " *Affleck,* 765 F.2d at 952 (quoting *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir.1985), *cert. denied,* 479 U.S. 1018, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986)). We approve of the Tenth Circuit's formulation and adopt it as our own. A "substantial question" is a " ' "close" question' or one that very well could be decided the other way.' " *Id.* We believe that these guidelines are amenable to thoughtful application by the district courts of New Mexico.

15. We further join with the Tenth Circuit in adopting the second prong of the *Miller* test. "Under this second prong, bail

pending appeal is appropriate if, assuming that the 'substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.'" *Affleck*, 765 F.2d at 952–53 (quoting *Miller*, 753 F.2d at 24).

*Procedural History of This Case*

16. Defendant, a Navajo man, was charged with a number of offenses in connection with an automobile accident which occurred on December 24, 1992, on Interstate 40 in Bernalillo County. Following a preliminary hearing in Bernalillo County, Judge Allen transferred venue to Taos County with the State's concurrence because of excessive pre-trial publicity. The percentages of Native Americans in Bernalillo and Taos Counties are 3.7% and 6.5%, respectively.

17. The first jury found Defendant guilty of DWI but deadlocked 9–3 in favor of conviction on the DWI-related felony charges and 8–4 on the reckless driving-related charges. A mistrial was declared, and Judge Allen entered an order permitting a retrial.

18. The State filed a motion for change of venue to Dona Ana County. Evidence was presented that Dona Ana County residents had less knowledge of the case than Taos County residents and that Taos County residents had substantial bias against Defendant and no bias against the State. The percentage of Native Americans in Dona Ana County is 0.8%. Judge Allen denied the motion, finding that transfer to the counties suggested by the State would result in a substantial reduction in the statistical probability that a Native American would appear on the jury and that the State failed in its burden to prove that the population of Taos County was biased against the State. *Cf. State v. Archer*, 32 N.M. 319, 323–24, 255 P. 396, 398 (1927) (state may seek change in venue of the prosecution when the populace of a county is in its favor and against the defendant). Judge Allen recused, and Judge Blackhurst was assigned to the case. Judge Blackhurst denied the State's motion to reconsider Judge Allen's venue decision.

19. The second jury deadlocked 9–3 in favor of conviction on all the remaining charges, and a mistrial was declared. Once again the State moved to change venue from Taos County. Judge Blackhurst recused, Defendant excused Judge Murdoch, and Judge Blackmer was assigned to hear the case.

20. Initially, Judge Blackmer ruled from the bench that if the third trial was held in a county that had less than a 6.5% Native American population, or if the percentage of Native Americans on the venire was less than that percentage, he would have additional Native Americans added to the venire to raise the percentage to 6.5%. Judge Blackmer changed his mind under the belief that such a plan would violate the rights of the parties and prospective jurors.

21. Judge Blackmer denied the State's request to return the trial to Bernalillo County, and, over Defendant's objection, he chose Dona Ana County. *See* NMSA 1978, §§ 38–3–3(A)(2)(c) (venue changed to county free from exception when party moving for change files affidavit that he believes he cannot obtain fair trial in county in which case is pending because an impartial jury cannot be obtained due to public excitement or prejudice), –6 (second change of venue shall be within discretion of trial court), and –7 (county to which case may be removed) (Repl. Pamp.1987). In concluding that public excitement and prejudice in Taos County made it probable that a fair trial could not be had in that county, Judge Blackmer considered evidence pertaining to media coverage, specific news articles, the nature of the Taos community, and Judge Blackhurst's comments after the second trial. After commenting extensively on media coverage and markets, Judge Blackmer chose Dona Ana County as the best alternative.

22. A third trial was held in Dona Ana County, and the jury found Defendant guilty on all of the remaining counts. Judge Blackmer imposed the maximum sentence on all counts and ran them consecutively except for the sentences for DWI and reckless driving, 364 days and 90 days respectively, which were run concurrently. Three years of the basic sentence were suspended, leaving an actual sentence of 22 years imprisonment.

23. Defendant has raised eight issues on appeal, several of which pertain to the validity of the conviction and sentence for DWI (second offense). As we noted above, Defendant was convicted of this offense at the first trial in Taos County. Even if Defendant raises a substantial question in connection with the convictions obtained after trial in Dona Ana County, he is not entitled to release under Section 31–11–1(C) unless his appeal also presents a substantial question with respect to the DWI conviction that alone resulted in a concurrent 364–day sentence of incarceration. *See Affleck,* 765 F.2d at 952–53. We turn first to a consideration of whether Defendant's challenges to the DWI conviction present a substantial question likely to result in reversal or an order for a new trial on that count.

*DWI Issues*

24. Defendant's DWI issues pertain to the validity of the prior conviction used to increase his sentence and to the admission of blood test results from which his guilt of the current DWI charge could be inferred. Assuming that Defendant's change-of-venue issue satisfies the substantial question, there is no question but that Defendant's DWI issues satisfy the second part of the test under Section 31–11–1(C)(2); a determination that the prior conviction is invalid would require reversal of the length of the sentence for DWI to no more than 90 days, *see* NMSA 1978, § 66–8–102(E) (Repl.Pamp.1994), while reversal on the grounds that the evidence was improperly admitted and not harmless would lead to a new trial on the DWI count.

*The 1987 conviction for DWI*

25. Defendant filed a motion after the third trial to reduce sentence. The docketing statement suggests that Defendant testified at the hearing on his motion that he was not aware that his 1987 guilty plea to DWI "would be counted as a first DWI in the event of subsequent DWI-related charges." Arguably, Defendant thus alerted the trial court to the broad question of whether the 1987 conviction could be considered a first DWI for any purpose, including an increased sentence under Section 66–8–102(F) (second

DWI conviction punishable by imprisonment for not more than 364 days).

26. SCRA 1986, 5–801(B) (Repl.1992) (Effective Aug. 1, 1992) provides that a motion to reduce sentence may be filed within 90 days after the sentence is imposed. As the judgment and sentence was filed on August 15, 1995, Defendant's September 13, 1995, motion was timely. SCRA 5–801(B) also specifies that the trial court has 90 days after the motion is filed to rule or the motion is deemed to be denied. Judge Blackmer orally denied the motion on November 3, 1995, but he never filed a written order. Defendant filed a notice of appeal from the oral ruling on November 15, 1995.

27. Although the trial court's oral ruling was not a final, appealable order, *see Vigil v. Thriftway Mktg. Corp.,* 117 N.M. 176, 178, 870 P.2d 138, 140 (Ct.App.1994), it appears that the motion was deemed denied by law 90 days after filing, on December 2, 1995. We have some question as to whether the trial court had jurisdiction to rule on the motion to reduce sentence in view of the filing of a notice of appeal from the judgment and sentence on October 16, 1995. *See State v. Garcia,* 99 N.M. 466, 470, 659 P.2d 918, 922 (Ct.App.1983) (Rule 57.1, a predecessor to SCRA 5–801, "does not authorize the imposition or modification of a sentence during the pendency of an appeal."); *but see State v. White,* 71 N.M. 342, 347, 378 P.2d 379, 382 (1962) (taking of appeal does not divest district court of jurisdiction for the purpose of passing upon motions directed at the judgment). These jurisdictional concerns aside, we will consider whether Defendant's claim that it was error to use his 1987 conviction to enhance the sentence for his current DWI conviction raises a substantial question.

28. The docketing statement indicates that the following evidentiary facts with respect to the 1987 DWI charge were established at the hearing on Defendant's motion to reduce sentence. Defendant contends that he was informed by a person at the counter at magistrate court that if he went to DWI school he would have his DWI charge dismissed. Defendant signed forms waiving counsel and a jury trial, and he pled guilty to

DWI. A judgment convicting Defendant of DWI was filed in magistrate court.

29. Defendant contends on appeal that use of the 1987 conviction to enhance his current sentence for DWI was improper because: he was not represented by counsel, and the magistrate did not explain the consequences of the prior guilty plea; counsel who represented Defendant in proceedings subsequent to the guilty plea did not move to vacate the plea; and the record does not demonstrate a sufficient factual basis for the uncounseled guilty plea. Our research suggests that these contentions do not present close questions.

30. In *State v. Miranda*, 100 N.M. 690, 692, 675 P.2d 422, 424 (Ct.App.1983), the defendant argued that because his counsel did not inform him of the collateral consequences of a deferred sentence, his plea was involuntary and made without effective assistance of counsel; consequently his prior guilty plea and conviction could not be used to enhance his current sentence. It was undisputed that counsel advised the defendant that upon successfully completing probation, the prior conviction would be "wiped out." *Id.* We cited numerous cases for the proposition that a defendant does not have to be informed of all collateral consequences of his guilty plea in order to make the plea voluntary, knowing, and intelligent. *Id.* at 693, 675 P.2d at 425; *see also Nichols v. United States*, 511 U.S. 738, ——, 114 S.Ct. 1921, 1928, 128 L.Ed.2d 745 (1994) (there is no requirement that a misdemeanor defendant be warned that his conviction might be used for enhancement purposes should he later be convicted of another crime). It is undisputed that Defendant signed a form waiving counsel. Defendant's claim that the magistrate court record lacks a sufficient factual basis for his guilty plea appears to be answered by *State v. O'Neil*, 91 N.M. 727, 729, 580 P.2d 495, 497 (Ct.App.1978) (absence of a record of guilty plea proceedings does not establish that the plea was invalid).

*Admission at the first trial of test results of blood drawn after the accident*

■ 31. University of New Mexico Hospital records showed that Defendant had a .18% blood alcohol level thirty minutes after the December 24, 1992, accident. Defendant contends that the admission of medical records and results of tests on blood drawn by medical personnel violated his physician-patient privilege. *See generally* SCRA 1986, 11–504 (Repl.1994) (general privilege pertaining to confidential communications made for purpose of diagnosis or treatment). Our Supreme Court has stated that blood alcohol tests are nontestimonial evidence and are not protected by the Fifth Amendment. *State v. Simpson*, 116 N.M. 768, 773, 867 P.2d 1150, 1155 (1993); *see also Schmerber v. California*, 384 U.S. 757, 765, 86 S.Ct. 1826, 1832–33, 16 L.Ed.2d 908 (1966) (testimonial capacities not implicated in compelled blood test).

■ 32. Blood drawn pursuant to a search warrant five hours after the crash showed that Defendant had a .10% blood alcohol level. Defendant asserts that admission of tests results from this second blood sample drawn at the hospital was improper because the affidavit for the search warrant did not establish that Defendant was arrested for DWI. *See generally State v. Richerson*, 87 N.M. 437, 439–40, 535 P.2d 644, 646–47 (Ct.App.) (arrest is essential introductory step before there can be a blood test under Implied Consent Act), *cert. denied*, 87 N.M. 450, 535 P.2d 657 (1975). Defendant does not contend that he was not under arrest at the time blood was drawn for the second time. *Cf. id.* at 439, 535 P.2d at 646 (undisputed that the defendant was not under arrest). Furthermore, we are unaware of any requirement that the affidavit for a search warrant authorizing a chemical test of a driver's blood include a statement that the driver was arrested for DWI. NMSA 1978, Section 66–8–111(A) (Repl.Pamp.1994) (search warrant authorizing chemical tests) only requires a finding, based on the affidavit for search warrant, that there is probable cause to believe that: the person has driven a motor vehicle while under the influence of alcohol, thereby causing the death or great bodily injury of another person; or the person has committed a felony while under the influence of alcohol and that chemical tests will produce material evidence in a felony prosecution.

33. For the foregoing reasons, we hold that Defendant's challenges to his conviction for DWI (second offense) do not present a "substantial question" within the meaning of Section 31–11–1(C)(2). However, because Defendant's appeal is likely to last longer than his DWI sentence, we next consider the propriety of the trial court's decisions arising out of the third trial that are challenged on appeal. Although many issues are raised, we focus on the trial court's decision to transfer venue to Dona Ana County.

*Venue Transfer*

■ 34. At issue is Judge Blackmer's decision to grant the State's motion for change of venue and to move the third trial from Taos County to Dona Ana County. In reviewing whether Defendant's challenges to the trial court change of venue constitute a substantial question, we start from the position that we will not disturb the trial court's venue ruling absent an abuse of discretion. *See State v. Hernandez*, 115 N.M. 6, 21, 846 P.2d 312, 327 (1993) (standard of review).

35. Judge Blackmer's order changing venue notes the following: the two trials in Taos County received extensive and pervasive coverage by the Albuquerque media and the weekly Taos newspaper; post-trial interviews with jurors were widely disseminated in Taos County; comments of the District Attorney, prosecutors, defense counsel, and Defendant and his family were published on television and in print media throughout Taos County; remarks critical of the District Attorney by a former and present senator from Taos were published in the *Albuquerque Journal* and *Taos News*, respectively; prospective Taos jurors are likely to learn of and share the views of the jurors who served in the first two trials; and Judge Blackhurst commented after the second trial that some jurors did not disclose their biases during jury selection.

■ 36. It is clear from the extensive findings in Judge Blackmer's order that he gave thoughtful consideration to the State's motion. In addition, our review of New Mexico appellate cases informs us that reversal of a trial court's ruling on a venue motion is not likely. What we are not sure of, however, is whether the exposure of potential venire members to the extent and nature of the publicity and excitement generated prior to the third trial supports a conclusion that a fair and impartial jury could not be found in Taos County, particularly when balanced against Defendant's rights to a jury of his peers. "Potential jurors' exposure to pretrial publicity, by itself, does not require a change of venue and does not raise a presumption of prejudice. '[T]he pertinent inquiry "is whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant." ' " *Hernandez*, 115 N.M. at 21, 846 P.2d at 327 (citations omitted).

37. We are equally unsure of the propriety of the trial court's decision to transfer venue to a county with a markedly lower percentage of Native Americans than either Taos County or Bernalillo County. (We expressly intimate no opinion on which county is the proper county to use as a benchmark.) A recent opinion of this Court suggests that Judge Blackmer's original plan to add Native Americans to the Dona Ana County venire to build up their percentage to a level equal to that of Taos County may have intruded on the rights of non-Native Americans to participate in jury service. *See State v. Guzman*, 119 N.M. 190, 194, 889 P.2d 225, 229 (Ct.App. 1994) (United States Supreme Court has attempted to prevent stigma attached to the disqualification of a juror because he or she appears to be of a particular racial or ethnic group), *cert. denied*, 119 N.M. 20, 888 P.2d 466 (1995).

38. Another perspective on the trial court's ultimate venue decision is that it had the same effect as if the judge had never considered racial demographics in choosing the new venue. *Cf. Mallett v. Missouri*, 494 U.S. 1009, 1011, 110 S.Ct. 1308, 1309, 108 L.Ed.2d 484 (1990) (Marshall, J., dissenting from denial of certiorari) ("*Batson* requires an examination of the trial court's justification for transferring venue in a manner that discriminated against potential Afro–American jurors."). Justice Marshall's dissenting comment was part of the rationale in *State v. Harris*, 282 N.J.Super. 409, 660 A.2d 539 (1995), a case involving the prosecution of a

black man for the murder of a white victim in a county with a large percentage of blacks. Based on pre-trial publicity, the defendant moved for a change of venue or the impanelling of a foreign jury. The trial court concluded that a foreign jury was required, but chose a county with a small percentage of blacks for reasons of "convenience" and "economy of time." Defendant's appeal was heard before trial.

39. The *Harris* court found that the same constitutional policies (e.g., cancel out antagonistic biases of different groups and enhance legitimacy of the judicial process in the eyes of the public) which underlie the limitations on a prosecutor's use of peremptory challenges to exclude members of a certain race from a jury also require a trial court to consider racial demographics in exercising authority to change venue of a criminal trial or impanel a foreign jury. *Id.* 660 A.2d at 543. The *Harris* court reversed the trial court's order and directed it to consider that factor, among others recently approved by the A.B.A., in selecting the county from which to draw a foreign jury. *Harris,* 660 A.2d at 545 (citing *Criminal Justice Standards: Trial by Jury ABA Crim. Just. Sec. Standard* 15–1.4 (3d ed. 1993)).

40. While we do not wish to be misunderstood as forecasting the result of Defendant's appeal on this issue, we conclude that the absence of cases directly on point, the effect of the trial court's ruling, the interplay of factors bearing on a decision to change venue, and the unique ethnic diversity present in New Mexico all combine to make the venue issue a substantial question. Notwithstanding that the standard of review on appeal would favor affirmance, the question is one that could well be decided the "other way" for the reasons just mentioned. However, Defendant is not entitled to immediate release on bail pending appeal, in view of our ruling against him on the viability of his challenges to the DWI (second offense) conviction and sentence. *See Affleck,* 765 F.2d at 952 (decision likely to result in reversal or an order for a new trial on *all counts* on which imprisonment has been imposed).

*Conclusion*

41. We hold that Section 31–11–1(C) does not violate the separation of powers and that Defendant has failed to meet the requirements of the appeal-bond statute with respect to the DWI conviction and sentence. We further hold that Defendant has met those requirements with respect to his challenges to the trial court's decision to transfer venue.

42. Accordingly, we affirm the trial court's denial of bail pending appeal of the DWI conviction and sentence, and we reverse the denial of bail pending appeal as to the remaining convictions and sentences. Upon completion of Defendant's sentence for DWI, and allowing for any meritorious deductions pursuant to NMSA 1978, Section 33–2–34 (Repl.Pamp.1990), the trial court shall hold a hearing to set conditions of release pending appeal of the remaining convictions and sentences. *See* SCRA 5–402(C).

43. **IT IS SO ORDERED.**

FLORES, J., concurs.

DONNELLY, J., concurs specially.

DONNELLY, Judge (Specially Concurring).

44. I join in the result reached by the majority upholding the constitutionality of NMSA 1978, Section 31–11–1(C) (Cum.Supp. 1995), regulating pretrial and post-conviction release, and the majority's holding that Defendant's challenges to his conviction for DWI, second offense, do not constitute a "substantial question" as contemplated by Section 31–11–1(C)(2). I also agree with the majority that Defendant is not eligible for release pending appeal of his DWI conviction and sentence.

45. I write separately, however, because, although I agree with the majority that Defendant's motion for review of the trial court's order denying post-conviction release on bail pending appeal of his other convictions demonstrates that his venue challenge raises a substantial question of law, I do not join in the majority's discussion of this issue. As observed by the majority, in 1988 New Mexico voters approved an amendment to

the state constitution deleting any state constitutional right to post-conviction bail. N.M. Const. art. II, § 13. The 1988 legislature also substantially modified Section 31–11–1 and adopted a statutory test for determining whether individuals convicted of noncapital offenses or offenses other than violent offenses, as defined in Subsection D, are entitled to be released on bail pending appeal. The latter statute, as amended, provides in applicable part:

C. If a defendant is convicted of a noncapital offense other than a violent offense and is sentenced to a term of imprisonment not suspended in whole, he shall not be entitled to release pending appeal unless the court finds:

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and

(2) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

46. Because Section 31–11–1(C) and (D) closely parallel the language of its federal counterpart, 18 U.S.C.A. § 3143(b) (West 1985 & Supp.1995), I agree that decisions of the federal courts construing the language of the Federal Bail Reform Act are instructive in interpreting similar New Mexico statutory provisions regulating the right of an individual following a criminal conviction to release pending the resolution of his appeal. *Cf. In re Adoption of Stailey*, 117 N.M. 199, 203–04, 870 P.2d 161, 165–66 (Ct.App.1994) (federal court decisions interpreting language closely paralleling state rules are deemed persuasive).

47. In the present case the trial court found that Defendant's motion for release pending appeal satisfied the provisions of Section 31–11–1(C) necessitating a showing by clear and convincing evidence that he was not likely to flee or pose a danger to the safety to others if released pending appeal, and that his appeal was not for purposes of delay. However, the trial court found that Defendant failed to meet the final requirement of Section 31–11–1(C)(2), because the issues sought to be asserted by Defendant on

appeal did not raise "*a substantial question of law or fact likely to result in reversal or an order for a new trial.*" (Emphasis added.)

48. In resolving the question of whether Defendant has satisfied his burden of eligibility for release pending appeal, I concur with the majority that the court in *United States v. Affleck*, 765 F.2d 944, 953 (10th Cir.1985), properly articulates the standard of review which should be applied in this case. The *Affleck* court, in pertinent part, succinctly states:

In sum, we hold that in order to grant bail pending appeal, a court must find that the defendant has met his burden of proving by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or to the community if released ..., and that he has established ... that the appeal is not for purpose of delay, and:

[1.] that the appeal raises a substantial question of law or fact; and

[2.] that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

765 F.2d at 953 (quoting *United States v. Miller*, 753 F.2d 19, 24 (3d Cir.1985)).

49. If the trial court determines that a question raised on appeal constitutes a "substantial question of law or fact," the trial court must then ascertain whether the issue is "likely to result in reversal or an order for a new trial." Section 31–1–11(C)(2). As stated in *Miller*, 753 F.2d at 23, "the phrase '*likely* to result in reversal or an order for a new trial' ... [should not] be construed to require the district court to predict the probability of reversal.... Instead, that language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal."

50. The *Miller* court further noted:

A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. A

court may find that reversal or a new trial is "likely" only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.

*Id.*

51. Defendant contends, among other things, that his appellate challenge to the propriety of the trial court's change of venue from Taos County to Dona Ana County raises a "substantial question of law" within the meaning of Section 31–11–1(C). Applying the definition of "substantial question of law" and the interpretation of the Bail Reform Act discussed in *Affleck,* 765 F.2d at 953, to Defendant's venue challenge in the case before us, it is clear that the legal question presented constitutes both a substantial issue and one of first impression. Thus, I agree that Defendant's venue challenge on his appeal to this Court satisfies the requirements of Section 31–11–1(C). However, because the complete trial record is not before us and the parties have not had the opportunity to fully brief or argue the questions posed on appeal, I do not believe that our analysis of the venue issue at this stage of Defendant's appeal should undertake to explore the contentions of the parties beyond a careful application of the statutory test delineated in Section 31–11–1.