**Certiorari Granted, June 5, 2012, No. 33,604**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-057**

**Filing Date: April 16, 2012**

**Docket No. 30,205**

**STATE OF NEW MEXICO,**

      **Respondent-Appellee,**

**v.**

**MARTIN RAMIREZ, a/k/a**
**RICHARD G. SANCHEZ,**

      **Petitioner-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Gary K. King, Attorney General
William Lazar, Assistant Attorney General
Santa Fe, NM

for Appellee

Dane Eric Hannum, Attorney at Law
Dane Eric Hannum
Albuquerque, NM

for Appellant

The Appellate Law Office of Scott M. Davidson
Scott M. Davidson
Albuquerque, NM

Amicus Curiae for New Mexico Criminal Defense Lawyers Association

**OPINION**

**KENNEDY, Judge.**

**{1}**     Martin Ramirez, a/k/a Richard Sanchez, (Petitioner) appeals the district court's denial of his writ of coram nobis, which sought to vacate Petitioner's twelve-year-old conviction due to ineffective assistance of counsel under *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799. *Paredez* requires appointed counsel to instruct defendants about the specific immigration consequences associated with a conviction for the charged crime prior to pleading guilty. *Id.* ¶ 9. This duty is more pressing in a case like this in which deportation was a near certainty for a relatively minor offense. The district court denied the writ on the ground that the rule announced in *Paredez* should not be applied retroactively to collateral challenges to final judgments and sentences. We reverse and hold that the ineffective assistance of counsel rules stated in *Paredez* and *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010) (holding that defense counsel must inform his or her client whether the client's plea carries a risk of deportation) are but extensions of a previously entrenched duty to provide representation and are retroactive. We remand for further proceedings consistent with this Opinion.

## I.     BACKGROUND

**{2}**     In 2009, Petitioner filed a writ of coram nobis, requesting the district court to vacate his 1997 misdemeanor convictions for possession of marijuana (under one ounce), possession of drug paraphernalia, and concealing identity. In his writ, Petitioner contended that he was denied his right to effective assistance of counsel because his appointed counsel failed to instruct him about any immigration consequences of pleading guilty to the crimes as required by *Paredez*, 2004-NMSC-036, ¶ 19.

**{3}**     At the hearing, Petitioner proffered evidence to prove that his attorney failed to instruct him about the immigration consequences and that this failure prejudiced him. The State did not contest the evidence, arguing only that it was irrelevant and that Petitioner was not entitled to relief because *Paredez* was not retroactive. The district court, accordingly, found that Petitioner's proffer was "essentially admitted . . . [and] not disputed" and proceeded to hear argument on whether *Paredez* was retroactive. The district court subsequently denied Petitioner's request on the ground that *Paredez* did not apply retroactively. Petitioner now appeals the district court's denial of his writ of coram nobis. We interpret such actions as motions pursuant to Rule 1-060(B) NMRA. *State v. Barraza*, 2011-NMCA-111, ¶ 5, 267 P.3d 815.

## II.     DISCUSSION

### A.     *Paredez* and *Padilla* Apply Retroactively

**{4}**     In *Paredez*, the New Mexico Supreme Court held that "criminal defense attorneys are obligated to determine the immigration status of their clients. If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading

guilty, including whether deportation would be virtually certain." 2004-NMSC-036, ¶ 19. Our Supreme Court concluded that failure to inform the defendant of these consequences would constitute ineffective assistance of counsel if the defendant suffered prejudice due to the omission. *Id.* Six years later, the United States Supreme Court in *Padilla* similarly held that "counsel must inform her client whether his plea carries a risk of deportation." 130 S. Ct. at 1486. The Supreme Court explained: "Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less." *Id.* The question before us today is whether the rule stated in *Paredez* and *Padilla* applies retroactively to cases on collateral review. "Retroactivity is a legal question, which we review de novo." *Kersey v. Hatch*, 2010-NMSC-020, ¶ 14, 148 N.M. 381, 237 P.3d 683 (internal quotation marks and citation omitted).

**{5}**     Although this is an issue of first impression in New Mexico, a number of state and federal appellate decisions have addressed the issue of retroactivity, causing a national split. A number have held that *Padilla* is retroactive. *United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011); *People v. Gutierrez*, 954 N.E.2d 365 (Ill. App. Ct. 2011); *Denisyuk v. State*, 30 A.3d 914 (Md. 2011); *Commonwealth v. Clarke*, 949 N.E.2d 892 (Mass. 2011); *Campos v. State*, 798 N.W.2d 565 (Minn. Ct. App. 2011); *People v. Nunez*, 917 N.Y.S.2d 806 (N.Y. App. Term 2010); *Ex parte De Los Reyes*, 350 S.W.3d 723 (Tex. Ct. App. 2011). On the other hand, some have held that *Padilla* is not retroactive. *Chaidez v. United States*, 655 F.3d 684 (7th Cir. 2011); *United States v. Chang Hong*, No. 10-6294, 2011 WL 3805763 (10th Cir. Aug. 30, 2011); *State v. Poblete*, 260 P.3d 1102 (Ariz. Ct. App. 2011); *Hernandez v. State*, 61 So. 3d 1144 (Fla. Dist. Ct. App. 2011); *State v. Shaikh*, 65 So.3d 539 (Fla. Dist. Ct. App. 2011); *Barrios-Cruz v. State*, 63 So. 3d 868 (Fla. Dist. Ct. App. 2011); *Gomez v. State*, No. E2010-01319-CCA-R3-PC, 2011 WL 1797305 (Tenn. Crim. App. May 12, 2011) (unpublished decision). The primary dividing line is the question of whether this principle is a "new" or "old" rule of law. "Old" rules are generally accorded retroactivity. For the reasons explained below, we are persuaded that those courts, which conclude that *Padilla* does not establish a new rule and is retroactive, represent the better reasoned view.

**{6}**     New Mexico has adopted the approach set out by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989), to determine whether a rule is new or old for purposes of retroactivity. *See State v. Frawley*, 2007-NMSC-057, ¶ 34, 143 N.M. 7, 172 P.3d 144. "If it is an old rule, it applies both on direct and collateral review. If it is a new rule, it generally applies only to cases that are still on direct review." *Id.* ¶ 34 (internal quotation marks and citations omitted). The exception to this principle is that "[a] new rule . . . may apply retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (internal quotation marks and citation omitted).

**{7}**     Thus, the threshold issue here is whether the rule that attorneys must inform their clients about immigration consequences is new or old. "[A] court establishes a new rule

3

when its decision is flatly inconsistent with the prior governing precedent and is an explicit overruling of an earlier holding." *Id.* ¶ 35 (internal quotation marks and citation omitted). This typically results in the court "break[ing] new ground or impos[ing] a new obligation on the [s]tates or the [f]ederal [g]overnment. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Kersey*, 2010-NMSC-020, ¶ 16 (internal quotation marks and citation omitted). As explained below, neither the decision of the New Mexico Supreme Court nor the United States Supreme Court were flatly inconsistent or explicitly contrary to precedent. As a result, we conclude that the rules stated in *Paredez* and *Padilla* are old rules and thus retroactive.

**{8}** In *Paredez*, 2004-NMSC-036, ¶¶ 19-20, our Supreme Court defined counsel's failure to inform the defendant of his specific immigration consequences as ineffective assistance of counsel by applying *Strickland v. Washington*, 466 U.S. 668 (1984). The United States Supreme Court likewise held that defendants were constitutionally guaranteed effective assistance of counsel under *Strickland* in the form of advice about both certain and potential immigration consequences before pleading guilty. *Padilla*, 130 S. Ct. at 1483. In *Strickland*, the Supreme Court held that a defendant must prove both deficient performance by counsel and prejudice for that deficiency to succeed on an ineffective assistance claim. 466 U.S. at 687. The Supreme Court explained that "[r]epresentation of a criminal defendant entails certain basic duties." *Id.* at 688. After listing some basic duties, including the duty of loyalty and avoiding conflicts of interest, the Supreme Court stated that "[t]hese basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance." *Id.* Because the circumstances of each case are different, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

**{9}** Even while applying an individualized inquiry, the United States Supreme Court has stated that a defendant's right to effective assistance of counsel as stated in *Strickland* is a clearly established rule. In concluding that a defendant was entitled to relief for ineffective assistance of counsel on collateral review, the Supreme Court stated that "it can hardly be said that recognizing the right to effective counsel breaks new ground or imposes a new obligation on the [s]tates[.]" *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (internal quotation marks and citation omitted). As Justice Kennedy has commented in regard to the *Teague* analysis, "[w]here the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." *Wright v. West*, 505 U.S. 277, 309 (1992).

**{10}** We conclude that *Paredez* and *Padilla* forge no new rule. Neither imposed a new obligation on counsel or directly contradicted precedent because defendants in New Mexico have been guaranteed effective assistance of counsel as set forth in *Strickland* since 1984. Both cases apply well-established principles regarding the effective assistance of counsel to

4

a set of facts that have taken on a rising trajectory of importance to criminal jurisprudence. *Strickland* is a rule designed for application to a myriad of factual contexts, and we conclude that its application in this context fails to contradict existing norms or forge new precedent in such a way that would require us to consider it a new rule. As the *Padilla* Court pointed out in citing a number of sources that date back prior to Petitioner's conviction, "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." 130 S. Ct. at 1482. The Court concluded that "[f]or at least the past [fifteen] years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Id*. at 1485. *Paredez* and *Padilla* simply apply an old rule with established norms of effective representation to a new set of facts. Under those facts, it had been clear before Petitioner's conviction that those norms obligated attorneys to advise their clients about deportation consequences.

**{11}** The State argues that both *Paredez* and *Padilla* broke with longstanding precedent. The majority of the State's argument relies on the fact that other state and federal circuit courts had precedent that did not require defendants to be instructed about immigration consequences. To the extent that the State cites out-of-state case law for the proposition that *Padilla* broke with longstanding precedent, we consider New Mexico precedent more persuasive and, as we explain below, the New Mexico cases that the State relies on are not applicable. With regard to New Mexico precedent, the State contends that *Paredez* contradicted established law in *State v. House*, 1996-NMCA-052, 121 N.M. 784, 918 P.2d 370, and *State v. Miranda*, 100 N.M. 690, 675 P.2d 422 (Ct. App. 1983). Though both *House* and *Miranda* dealt with issues unrelated to immigration consequences, *Miranda* held that defense counsel had no duty to advise the defendant about the collateral consequences of a deferred sentence. 100 N.M. at 692, 675 P.2d at 424. In *House*, the defendant appealed a sentencing enhancement on his second DWI conviction because the magistrate, who convicted him of his first DWI for which he represented himself, did not explain the consequences of the prior guilty plea. 1996-NMCA-052, ¶¶ 28-29. *Paredez* clearly enunciates a standard for effective representation that deals with a completely different context. Here, *Paredez* enunciates a norm of conduct specific to advising a criminal defendant of immigration consequences of his plea.

**{12}** To the extent that the State argues *Paredez* and *Padilla* overrule cases, which indicate that counsel does not have a duty to instruct a client about collateral consequences of a plea agreement, we view the departure as reflecting that collateral consequences are more robust in some varieties, such as deportation that affects a very broad scope of interests. *Padilla* stated that "distinction [of collateral consequences] is . . . ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation[.]" 130 S. Ct. at 1476. The Supreme Court in *Padilla* explained that, "[a]lthough removal proceedings are civil, deportation is intimately related to the criminal process, which makes it uniquely difficult to classify as either a direct or a collateral consequence." *Id*. Thus, precedent about unrelated collateral consequences is inapplicable to *Paredez* and *Padilla*.

5

**{13}** The State also contends that "*Padilla* established a 'new rule' by categorically creating a claim for relief where none existed before." The State argues that "[a] court adjudicating the first prong of a *Paredez-Padilla* claim does not have to engage in the highly deferential review of evidence [that] *Strickland* commands for other types of ineffective assistance claims." The State cites *Strickland* in arguing that "[i]t is unnecessary to review counsel's performance 'from counsel's perspective at the time,' to avoid 'the distorting effects of hindsight[.]'" We point out that the highly deferential review to which the State refers is limited to the *Strickland* analysis of trial tactics pursued by counsel. *Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 ("On appeal, we will not second guess the trial strategy and tactics of the defense counsel." (internal quotation marks and citation omitted)). To the extent that the State argues that *Paredez* and *Padilla* establish categorical rules not requiring a thorough review of the facts, the holdings in both cases require a thorough inquiry into the facts as to what advice the defendant should have been afforded, whether he was given it, and whether the defendant was prejudiced by not receiving the advice.

**{14}** Other aspects of the *Padilla* opinion indicate that the Supreme Court did not create a new rule. For example, the absence of a *Teague* analysis in *Padilla* alone indicates that this is not a new rule. In *Teague*, the United States Supreme Court stated that

> implicit in the retroactivity approach . . . is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated.

489 U.S. at 316. The Court shortly thereafter clarified in *Penry v. Lynaugh* that when a case is before the Court on collateral review, the Court "must determine, as a threshold matter, whether granting [the defendant] the relief he seeks would create a 'new rule.'" 492 U.S. 302, 313 (1989) (citation omitted). "Under *Teague*, new rules will not be applied or announced in cases on collateral review unless they fall into one of two exceptions [specified in *Teague*]." *Penry*, 492 U.S. at 313. We note that the procedural posture in *Padilla* indicates that the defendant's conviction was final, and he was attacking it on collateral review. *Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008), *overruled by Padilla*, 130 S. Ct. at 1486. Therefore, if the Supreme Court intended its holding in *Padilla* to create a new rule, it would have to determine as a threshold issue whether the rule was old or new under *Teague* because the conviction in *Padilla* was on collateral review. The Court clearly did not engage in this analysis, and we must conclude that the *Padilla* court did not believe it was establishing a new rule.

**{15}** Moreover, the *Padilla* court made clear references to the opinion's application to collateral proceedings attacking guilty pleas. In addressing Kentucky's concern that requiring defense counsel to provide information about immigration consequences would open the floodgates to collateral appeals of finalized convictions, the United States Supreme Court explained why it doubted a flood would follow in the wake of *Padilla*. The Supreme

Court compared this issue to its holding in *Hill v. Lockhart*, requiring counsel to advise clients about their parole eligibility before pleading guilty. 474 U.S. 52, 62 (1985). The Supreme Court concluded that "[a] flood did not follow in that decision's wake" and explained that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485. The Supreme Court further stated:

> [P]leas are less frequently the subject of collateral challenges than convictions obtained after a trial. . . . The nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential.

*Id*. at 1485-86. From this, we conclude that the Supreme Court contemplated *Padilla*'s application on collateral attacks in making its decision.

**{16}** Based on the above analysis, we conclude that *Paredez* and *Padilla* do not establish a new rule and should be applied retroactively. We now apply *Paredez* and *Padilla* to the case at bar.

## B.     Application of *Paredez* and *Padilla* to the Facts of This Case

**{17}** A reviewing court must look at the individual facts of the case to establish what type of advice about immigration consequences should have been given to the defendant. Both misinforming and failing to inform a defendant of the immigration consequences of a plea are objectively unreasonable and constitute deficient performance. *Paredez*, 2004-NMSC-036, ¶¶ 15-16. Moreover, "general advice that a guilty plea 'could,' 'may,' or 'might' have an effect on immigration status" is equally unacceptable. *Id*. ¶ 17. Misadvice, no advice, and general advice all fail to provide the defendant with "information sufficient to make an informed decision to plead guilty." *Id*.

**{18}** In this case, Petitioner was facing definite deportation at the time of his conviction. Petitioner was convicted of several charges, including possession of drug paraphernalia on January 6, 1997. This date is significant because about nine months prior to his guilty plea, Congress removed any discretionary relief available to those who commit any offense related to a controlled substance, other than the possession of thirty grams or less of marijuana, by enacting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

7

Pub. L. No. 104-132, § 440(d)(2), 110 Stat. 1214 (1996).[1] If Petitioner had been convicted prior to April 24, 1996, when the AEDPA became effective, the Attorney General would have had the authority to grant discretionary relief from deportation under the 1952 Immigration and Nationality Act. *Padilla*, 130 S. Ct. at 1480; *Allen v. Siebert*, 552 U.S. 3, 4 (2007) (stating that "April 24, 1996 [is the] AEDPA's effective date"). This "authority . . . had been exercised [by the Attorney General] to prevent the deportation of over 10,000 non[-]citizens during the [five]-year period prior to 1996[.]" *Padilla*, 130 S. Ct. at 1480. The United States Supreme Court has explained that "[p]rior to AEDPA . . . , aliens . . . had a significant likelihood of receiving [discretionary] relief." *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 325 (2001).

**{19}** Thus, it was clear that, at the time of his conviction, Petitioner had entered into a plea agreement that would almost certainly guarantee his deportation from the United States. We conclude that Petitioner should have been given advice about these likely consequences before entering into a plea agreement with the State.

**{20}** In his motion, Petitioner alleged that his counsel failed to inform him about any immigration consequences. A plea to time served in a magistrate court for offenses that are minor, under most other circumstances than this, makes Petitioner's story believable, and the State and the district court apparently took these facts at face value. At the hearing, Petitioner repeated the proffer of evidence laid out in his motion to prove that his attorney failed to instruct him about the immigration consequences and that this failure prejudiced him. When asked to respond to Petitioner's proffer, the State stated that it "defer[red] to what the [c]ourt wants to do. [T]he State will argue again that the [c]ourt had reviewed this previously [in a different case] and . . . rul[ed] that [*Paredez*] is not retroactive. As such, the testimony would be irrelevant." The district court responded that the testimony would not be irrelevant, but the court had nonetheless "found in reading the materials [provided by Petitioner that] there doesn't seem to be any factual dispute that [Petitioner's alleged] facts exist." The court then found that Petitioner's proffer was "essentially admitted [and] not disputed."

**{21}** We conclude that the district court found at the hearing that Petitioner had not received advice about immigration consequences from his attorney, and he was prejudiced because of this failure. To the extent the State argues that Petitioner failed to establish a

---

[1]This section of the AEDPA amended the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1997) to state that the Attorney General's discretionary relief "shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in [S]ection 1251(a)(2)(A)(iii), (B), (C), or (D) of this title[.]" One of the deportable offenses that was no longer afforded discretion included "a violation of . . . any law or regulation of a [s]tate, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of [thirty] grams or less of marijuana." 8 U.S.C. 1251(A)(2)(B)(i) (1997).

prima facie case for ineffective assistance of counsel sufficient to justify a hearing, we determine that the State has waived this argument because, at the hearing, the State failed to contest the factual basis to Petitioner's claim of ineffective assistance of counsel. Thus, Defendant has met the requirements set forth in *Paredez*, 2004-NMSC-036, ¶ 19, and *Padilla*, 130 S. Ct. at 1486.

## III. CONCLUSION

**{22}** We reverse the district court and hold that *Paredez* and *Padilla* are retroactive. In this case, Petitioner should have been advised that deportation would almost certainly result from his conviction of possession of drug paraphernalia. Because Petitioner has completely established ineffective assistance of counsel and prejudice, we remand this case to the district court for Petitioner to have an opportunity to withdraw his plea.

**{23}** **IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**

**Topic Index for *State v. Ramirez*, Docket No. 30,205**

| **AE** | **APPEAL AND ERROR** |
| AE-PJ | Prejudicial Error |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **AT** | **ATTORNEYS** |
| AT-EA | Effective Assistance of Counsel |
| | |
| **FL** | **FEDERAL LAW** |
| FL-IM | Immigration |
| | |
| **RE** | **REMEDIES** |
| RE-CN | Coram Nobis |