946 P.2d 955

**STATE of Hawai‘i, Plaintiff–Appellee/Cross–Appellant,**

v.

**Russell Peter Louis CULLEN, also known as Russell P.L. Cullen, Defendant–Appellant/Cross–Appellee.**

No. 19936.

Supreme Court of Hawai‘i.

Oct. 21, 1997.

Myles S. Breiner, on the briefs, Honolulu, for defendant-appellant/cross-appellee Russell Peter Louis Cullen.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellee/cross-appellant State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The defendant-appellant/cross-appellee Russell Peter Louis Cullen appeals from the judgment and sentence following his conviction of one count of attempted murder in the first degree and one count of possession of firearm by a person convicted of certain crimes. On appeal, Cullen argues that the circuit court committed plain error in instructing the jury, inasmuch as: (1) the instructions on attempted first degree murder were defective because they failed to inform the jury that "intent to cause the deaths of Robin Saya and Carolina Ching in a common scheme or plan" was an essential element of the offense of attempted first degree murder; (2) the "transitional" instruction from attempted first degree murder to second degree murder and attempted second degree murder was defective in that it (a) treated the second degree charges as included offenses of the first degree charge, rather than as separate and mutually exclusive offenses that depend on irreconcilable factual premises, and (b) failed to inform the jury that a guilty verdict as to attempted first degree murder precluded a guilty verdict as to second degree murder and attempted second degree murder; (3) the instructions on both attempted first degree murder and attempted second degree murder were defective because they did not include the language "under the circumstances as the defendant believed them to be"; and (4) the instruction that "conduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's intent to commit the offense," while included in the instruction on attempted first degree murder, was omitted from the instruction on attempted second degree murder, making that instruction defective. All of Cullen's points of er-

ror are without merit. Accordingly, we affirm Cullen's conviction and sentence.

On cross-appeal, the prosecution argues that Cullen's motion for bail pending appeal was improperly granted and alleges that the trial court erred in its entry of the following findings of fact (FOFs): (1) that, in this appeal, Cullen raised a substantial question of law, which, if decided in Cullen's favor, might result in a reversal or an order for a new trial of all the counts in connection with which imprisonment had been imposed; (2) that Cullen's medical condition provided clear and convincing evidence supporting the conclusion that he did not pose a flight risk; (3) that the prosecution did not present any evidence in the hearing on the motion, but relied, instead, upon the records and files in this case; and (4) that the prosecution's position that, because Cullen was convicted of a serious offense, he was, therefore, dangerous, was inconsistent with the provisions and intent of Hawai'i Revised Statutes (HRS) § 804-4.

## I. BACKGROUND

This case arises out of the shooting of Carolina Ching and Robin Saya on November 17, 1993, at the Kukui Plaza parking structure. Ching was killed; Saya suffered serious injuries.

Saya identified Cullen as the shooter. Accordingly, on December 6, 1993, Cullen was charged by way of complaint with one count of attempted murder in the first degree in violation of HRS §§ 705-500,[1] 707-701(1)(a),[2] and 706-656,[3] one count of murder in the second degree in violation of HRS §§ 707-701.5(1)[4] and 706-656,[5] one count of attempted murder in the second degree in violation of HRS §§ 705-500,[6] 707-701.5(1),[7] and 706-656,[8] and one count of possession of firearm by a person convicted of certain crimes in violation of HRS §§ 134-7(b) and (h).[9]

1. HRS § 705-500 (1993) provides:

 **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
 (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
 (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
 (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
 (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

2. HRS § 707-701 (1993) provides in relevant part:

 **Murder in the first degree.** (1) A person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of:
 (a) More than one person in the same or separate incident;
 . . . .

 (2) Murder in the first degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

3. HRS § 706-656(1) (1993) provides in relevant part that "[p]ersons convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment without possibility of parole."

4. HRS § 707-701.5 (1993) provides:

 **Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
 (2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

5. HRS § 706-656(2) (Supp.1996) provides in relevant part that, "except as provided in section 706-657, persons convicted of second degree murder and attempted second degree murder shall be sentenced to life in prison with possibility of parole." The legislature amended HRS § 706-657 in 1996, although the amendment does not affect the present analysis.

6. See supra note 1.

7. See supra note 4.

8. See supra note 5.

9. HRS § 134-7 (Supp.1996) provides in relevant part:

Cullen's first trial commenced on November 3, 1994. In his defense, Cullen attempted to establish an alibi and maintained that he had been misidentified. A mistrial was declared on November 30, 1994, when the jury was unable to reach a unanimous verdict.

Cullen's second trial began on September 19, 1995. During closing argument, the prosecutor stated to the jury:

> [W]e are talking not about two separate incidents, we are talking about the same incident that happened at the same time, that he intended to kill both of them on that occasion, as opposed to him intending to kill just Carol and then later formulating the intent to kill Robin in a separate incident.
>
> He has to have the intent to kill both of them in the same incident.
>
> . . . .
>
> I make a point of this same incident for a very short reason and I will get to that.
>
> You will be instructed[:] "If and only if you find the defendant is not guilty in Count One of the Offense of Attempted Murder in the [First] Degree, you find him not guilty of Count One; or you are unable to reach a unanimous verdict to this offense, then you must consider that the defendant is guilty or not guilty in Counts Two and Three of the Offense of Murder in the Second Degree and Attempted Murder in the Second Degree."
>
> If you find him not guilty of Count One, or you can't reach a unanimous decision; then you got to look at Counts Two and Three, Murder Second, and Attempted Murder Second Degree.
>
> If, however, you find him guilty of Attempted Murder in the First Degree, you do not go to Counts Two and Three.
>
> The only difference between Attempted Murder One and Murder Two, and At-tempted Murder Two, is the same incident. If they are different incidents, then we are looking Murder Second and Attempted Murder in the Second Degree.
>
> If he didn't have the intent to kill both of them in the same incident, then we are look[ ]ing at Counts Two and Three.
>
> That's really the only difference; but you cannot convict him of all three counts. You can only convict him like Count One, then you don't go on to Counts Two and Three, you just jump over to Count Four.

The prosecutor concluded his remarks to the jury by saying:

> Based upon all the credible evidence that you have heard in this case, and based on the law that the Court will instruct you on, you must find this defendant, Russell Cullen, guilty as charged of Count One; Attempted Murder in the First Degree; and Count Four, Possession of a Firearm by a person convicted of certain crimes.

Prior to deliberations, the court instructed the jury:

> Defendant is charged in Count One with the Offense of Attempted Murder in the First Degree. There are two material elements of Murder in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These two elements are, one[:] that on or about the 17th day of November, 1993, on the Island of Oahu, City and County of Honolulu, State of Hawaii; the defendant did intentionally engage in conduct. Two[:] that such conduct constituted a substantial step in a course of conduct intended or known to cause the death of Robin Saya and Carol[ina] Ann Ching in the same incident.
>
> Conduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's intent to commit the offense.

**Ownership or possession prohibited, when; penalty.** . . .

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, pos-sess, or control any firearm or ammunition therefor.

. . .

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. . . .

If and only if you find the defendant not guilty in Count One of the Offense of Attempted Murder in the First Degree; or if you are unable to reach a unanimous verdict as to this offense, then you must consider whether defendant is guilty or not guilty in Counts [T]wo and Three of the Offenses of Murder in the Second Degree and Attempted Murder in the Second Degree.

The defendant is charged in Count Two with the Offense of Murder in the Second Degree. There are two material elements of Murder in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt. These two elements are; one, that on or about the 17th day of November, 1993, on the Island of Oahu, City and County of Honolulu, State of Hawaii; the defendant did cause the death of Carol[ina] Ann Ching. Two; that the defendant did so intentionally or knowingly.

Defendant is charged in Count Three with the Offense of Attempted Murder in the Second Degree. There are two elements to the Offense of Attempted Murder in the Second Degree, each of which the prosecution must prove beyond a reason-

able doubt. These two elements are; one, that on or about the 17th day of November, 1993, on the Island of Oahu, City and County of Honolulu, State of Hawaii; the defendant did intentionally engage in conduct; two, that such conduct constituted a substantial [step] in a course of conduct intended or known to cause the death of Robin Saya.

. . . .

The defendant is charged with one [or] more than one offense in separate counts of the complaint. Each count and the evidence that applies to that count is to be considered separately. . . .

Cullen did not object to any of these instructions.

The jury returned verdicts of guilty as to Count One (attempted first degree murder)and Count Four (possession of a firearm by a person convicted of certain crimes). Cullen was sentenced to life imprisonment without the possibility of parole in connection with Count One and ten years imprisonment in connection with Count Four.

On April 8, 1996, Cullen filed a motion for bail pending appeal pursuant to HRS § 804–6.[10] A hearing on the motion was held on

---

10. HRS § 804–6 (1993) provides:

**Bail bond after conviction.** Unless otherwise ordered by the court[,] the bail bond given by any defendant prior to the defendant's conviction, shall, in cases where bail after conviction is permitted either absolutely or by order of the court, be continued as the bail of the defendant after conviction, and until the final determination of any subsequent proceedings in the cause.

Cullen's request for bail pending appeal was also subject to HRS §§ 804–3 and 804–4 (1993), which are set out below.

§ 804–3 **Bailable offenses.** (a) For the purposes of this section, "serious crime" means murder or attempted murder in the first degree, murder or attempted murder in the second degree, or a class A or B felony, except forgery in the first degree and failing to render aid under section 291C–12, and "bail" includes release on one's own recognizance, supervised release, and conditional release.

(b) Any person charged with a criminal offense shall be bailable by sufficient sureties; provided that bail may be denied where the charge is for a serious crime, and:

(1) There is a serious risk that the person will flee;

(2) There is a serious risk that the person will obstruct or attempt to obstruct justice, or therefore, injure, or intimidate, or attempt to thereafter, injure, or intimidate, a prospective witness or juror;

(3) There is a serious risk that the person poses a danger to any person or the community; or

(4) There is a serious risk that the person will engage in illegal activity.

(c) Under subsection (b)(1) a rebuttable presumption arises that there is a serious risk that the person will flee or will not appear as directed by the court where the person is charged with a criminal offense punishable by imprisonment for life without the possibility of parole. For purposes of subsection (b)(3) and (4) a rebuttable presumption arises that the person poses a serious danger to any person or community or will engage in illegal activity where the court determines that:

(1) The defendant has been previously convicted of a serious crime involving violence against a person within the ten-year period preceding the date of the charge against the defendant;

(2) The defendant is already on bail on a felony charge involving violence against a person; or

May 15, 1996. Cullen presented evidence of his allegedly life-threatening health problems and need for frequent medical treatment in support of his argument that he presented no flight risk.[11] Cullen also argued that, inasmuch as the shooting victim/witness Saya was then under indictment on federal drug charges and himself under house arrest, Cullen would have minimal, if any, opportunity to pose a risk to Saya if freed on bail.

In applying HRS § 804-4, the circuit court adopted the criteria set forth in *United States v. Miller*, 753 F.2d 19 (3d Cir.1985), in interpreting the federal Bail Reform Act of 1984, 18 U.S.C. § 3143 (1988),[12] after which HRS § 804-4 was patterned. Accordingly, the circuit court examined: (1) whether Cullen was likely to flee or pose a danger to any person in the community; (2) whether this appeal was made for the purpose of delay; (3) whether the appeal raised a substantial issue of law or fact; and (4) whether, if the substantial question was determined favorably to Cullen, the decision was likely to result in a reversal or order for a new trial on all counts in which imprisonment would have been imposed.

Having determined that Cullen posed no flight risk and that his appeal was not taken for purpose of delay and posed a substantial question of law, which, if decided favorably to Cullen, was likely to result in an order for a new trial, the circuit court entered an order granting Cullen's motion for bail pending appeal (the first bail order) on May 29, 1996.

Judgment was entered on June 12, 1996, and, on June 14, 1996, Cullen filed this timely appeal.

Pursuant to a motion filed by the prosecution, this court vacated the first bail order without prejudice on September 27, 1996, inasmuch as the circuit court had "not ma[d]e sufficient findings regarding whether [Cullen] showed by clear and convincing evidence that he [wa]s not a danger to any person or the community if released." Thereupon, and without further hearing, the sentencing court issued an amended bail order, which included

(3) The defendant is on probation or parole for a serious crime involving violence to a person.

(d) If, after a hearing[,] the court finds that no condition or combination of conditions will reasonably assure the appearance of the person when required or the safety of any other person or community, bail may be denied.

§ 804-4 **When a matter of right.** If the charge is for an offense for which bail is allowable under section 804-3, the ·defendant may be admitted to bail before conviction as a matter of right. The right to bail shall continue after conviction of a misdemeanor, petty misdemeanor, or violation, and release on bail may continue, in the discretion of the court after conviction of a felony until the final determination of any motion for new trial, appeal, habeas corpus, or other proceedings which are made, taken, issued, or allowed for the purpose of securing a review of the rulings, verdict, judgment, sentence, or other proceedings of any court or jury in or by which the defendant has been arraigned, tried, convicted, or sentenced; except that no bail shall be allowed after conviction and prior to sentencing in cases where bail was not available under section 804-3, or where bail was denied or revoked before conviction; and provided further that no bail shall be allowed pending appeal of a felony conviction where a sentence of imprisonment has been imposed. The court shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the court finds:

(1) By clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and

(2) That the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

If the court makes such findings, the court shall order the release of the person in accordance with the provisions of section 804-7.1. No defendant entitled to bail, whether bailed or not, shall, without the defendant's written consent, be subject to the operation of any sentence passed upon the defendant while any proceedings to procure a review of any action of the trial court or jury in the premises are pending and undetermined, except as provided in section 641-14(a).

11. At the time of the May 1996 hearing, Cullen estimated that he had only "six to 12 months to live."

12. Amendments made to 18 U.S.C. § 3143 in 1986 and 1988 clarified the 1984 Act by providing that bail could only be granted when an appeal was likely to result in "a sentence that does not include a term of imprisonment" or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143.

a finding that Cullen "did not pose a danger to the safety of any other person or the community."

## II. *STANDARDS OF REVIEW*

### A. *Plain Error*

■ ... "We may recognize plain error when the error committed affects substantial rights of the defendant." [*State v.] Horswill,* 75 Haw. [152,] 155, 857 P.2d [579,] 581–82 [ (1993) ] (citing [*State v.] Kelekolio,* 74 Haw. [479,] 515, 849 P.2d [58,] 75 [ (1993)) ]; *see also* [*State v.] Kinnane,* 79 Hawai'i [46] 50, 897 P.2d [973,] 977 [ (1995) ] ("[I]t may be plain error for a trial court to fail to give an ... instruction even when neither the prosecution nor the defendant have requested it ... because ... the ultimate responsibility properly to instruct the jury lies with the circuit court and not with trial counsel.") (Citation, internal quotation signals, and footnote omitted.) (Emphasis deleted.); HRPP 52(b) ... ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Arceo,* 84 Hawai'i 1, 33, 928 P.2d 843, 875 (1996) (some brackets and ellipsis points in original and some added).

### B. *Jury Instructions*

■ " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.' " *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio,* 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)).... *See also State v. Hoey,* 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) ...

(quoting *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

■ [E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.

*State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evati,* 500 U.S. 391, 402–03 [111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432] ... (1991)[.]

*Arceo,* 84 Hawai'i at 11–12, 928 P.2d at 853–54 (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa,* 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson,* 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

### C. *Interpretation of a Statute*

■ "[T]he interpretation of a statute [or ordinance] is a question of law reviewable *de novo.*" *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

*Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our

statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis point in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

### D. *Order Granting Bail Pending Appeal*

 The decision whether to grant a motion for release on bail pending appeal requires a judgment call on the part of the sentencing court.

> "[D]ecisions . . ., which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." *Walsh v. Chan,* 80 Hawai'i 212, 215, 908 P.2d 1198, 1201 (1995) (citing *Sato v. Tawata,* 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995)). . . . " 'The trial court abuses its discretion when it clearly exceeds the

bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.' " *State v. Ganal,* 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996) (quoting *State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994)).

*Arceo,* 84 Hawai'i at 11, 928 P.2d at 853; *see also Loa,* 83 Hawai'i at 348, 926 P.2d at 1271. However, in this case, the circuit court based its decision to grant the motion upon its interpretation of HRS § 804–4. The interpretation of a statute is reviewable *de novo. See supra* part II.B. Therefore, we first review the circuit court's statutory interpretation subject to the *de novo* standard. If the statute has been correctly construed, we will then review the decision to grant the motion for release on bail pending appeal under an abuse of discretion standard. If the circuit court has erroneously interpreted the statute, there is per se abuse of discretion. *Accord Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 755–57, 106 S.Ct. 2169, 2175–77, 90 L.Ed.2d 779 (1986), *overruled on other grounds by Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Davidowitz v. Delta Dental Plan of California, Inc.,* 946 F.2d 1476, 1477–78 (9th Cir.1991); *F.T.C. v. Southwest Sunsites, Inc.,* 665 F.2d 711, 717 (5th Cir.1982); *Donovan v. Bierwirth,* 680 F.2d 263, 269 (2d Cir.1982).

### III. *DISCUSSION*

#### A. *A "Common Scheme Or Plan" Is Not An Element Of Attempted First Degree Murder.*

 Cullen argues that the circuit court did not properly instruct the jury that the offense of attempted first degree murder requires the perpetrator to act with "an *intent to cause two or more deaths as part of a common scheme · or plan.*" (Emphasis in original.) This argument is without merit.

As mandated by HRS § 701–102 (1993), "the provisions of th[e Hawai'i Penal] Code [ (the HPC) ] govern the construction of . . . any offense set forth herein." Accordingly, the HPC is the necessary starting point for determining the elements of the offense of

attempted murder in the first degree. At HRS § 702–205 (1993), the HPC further provides that "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as ... are specified by the definition of the offense[.]"

The offense of "murder in the first degree," with which Cullen was charged, is defined by HRS § 707–701(1) as "intentionally or knowingly caus[ing] the death of ... [m]ore than one person in the same or separate incident[.]" *See supra* note 2. Thus, the defining statute establishes only three elements of the offense: (1) the offender's conduct—"causing"; (2) the result of the offender's conduct—"the death of more than one person"; and (3) the circumstances attendant to the conduct—"in the same or separate incident." Accordingly, the language of HRS § 707–701 provides no support for Cullen's argument that "a common scheme or plan" is a material "element" of the offense of first degree murder.

Cullen attempts to argue that this court established "a common scheme or plan" as a material element of first degree murder in *Briones v. State,* 74 Haw. 442, 848 P.2d 966 (1993) (*Briones II* ). Cullen, however, is mistaken. The facts in *Briones* were, in many ways, similar to those of this case. The defendant, Isagani Briones, fired a shotgun several times into a group of people, killing one and seriously injuring another. Like Cullen, Briones was charged with attempted murder in the first degree, under HRS § 707–701(1), and murder and attempted murder, both in the second degree, under HRS § 707–701.5(1). However, unlike Cullen's jury, the *Briones* jury returned a guilty verdict on all three charges. Briones appealed, contending that a conviction on the charge of attempted first degree murder, on the one hand, precluded guilty verdicts on the charges of second degree murder and attempted second degree murder, on the other, inasmuch as the two sets of verdicts were factually inconsistent and therefore mutually exclusive. In *State v. Briones,* 71 Haw. 86, 784 P.2d 860 (1989) (*Briones I* ), this court agreed with Briones's position, affirmed his conviction of attempted murder in the first degree, but reversed his second degree mur-

der and attempted second degree murder convictions.

In *Briones II,* Briones appealed the circuit court's order dismissing his petition for post-conviction relief, arguing that his counsel's failure to challenge the factually inconsistent and mutually exclusive verdicts constituted ineffective assistance. This court ultimately agreed with Briones's contention and reversed his attempted first degree murder conviction as well, remanding his case for a new trial.

In our analysis of Briones's position, this court focused upon the relationship between the offenses of first and second degree murder and offered several hypotheticals intended to illustrate the distinct factual scenarios that would support each charge, thereby attempting to

clarify the state of mind necessarily related to the first degree murder term "same or separate incident," and distinguish it from the separate states of mind related to an incident which gives rise to multiple convictions of second degree murder. .

First, *the requisite state of mind to cause the death of two or more persons in the same incident* may be found where an actor fires one or several bullets indiscriminately into a crowd of people and more than one person dies. Such an act can readily be described as intentionally or knowingly causing the death of more than one person in the "same incident."

Second, *in the case of a serial killer, the requisite state of mind to cause the death of more than one person may be found in a continuing course of conduct, or a common scheme or plan,* even though the acts may be "separated in time." Whether such acts are deemed to have occurred in the "same incident" or "separate incidents," for purposes of HRS § 707–701(1)(a), will depend on factors such as location, time, and method. Even facts demonstrating that the deaths occurred only a few seconds apart could be described as "separate incidents," and may be charged as such. The key factor supporting a charge of first degree murder is the actor's state of mind.

Finally, we examine the case of an actor who causes the death of two or more people in incidents separated in time but without the intent to cause both deaths as part of a common scheme or. plan. For example, an actor, in the course of committing robbery of a convenience store, shoots and kills an employee. Afterwards, a passerby is shot and killed by the actor attempting to escape. Although two people were killed in separate incidents during the same criminal episode, the actor may not be guilty of first degree murder because the requisite state of mind to cause the death of two or more people in the same or separate incident arguably is lacking. The actor would possibly be guilty, however, of two separate counts of second degree murder.

*Briones II,* 74 Haw. at 454–55, 848 P.2d at 973 (emphases added). Clearly, the phrase "common scheme or plan" was used in *Briones II,* not to indicate a material element of the offense of first degree murder, but to provide an example of facts that would support a charge of first degree murder under HRS § 707–701(1) where the homicidal acts occurred in *separate* incidents and at *different* times.

In fact, the phrase "common scheme or plan" is used in *Briones II* precisely to emphasize the contrast between the case of the serial killer, who is properly chargeable with first degree murder because his multiple killings, even though separated in time, are nevertheless united by a "common scheme or plan," and that of a killer who, under circumstances more akin to those presented in the instant case, commits first degree murder by acting with "the requisite state of mind to cause the death of two or more persons in the same incident" by "fir[ing] one or several bullets indiscriminately into a crowd of people and more than one person dies." Cullen's assertion that *Briones II* "stands for the legal principle that for a charge of first degree attempted murder, the paramount issue is whether the actor had an intent to cause two or more deaths as part of a com-

mon scheme or plan" takes only a portion of the *Briones II* analysis into account and is, accordingly, inaccurate.

We hold that the circuit court's instruction that, in order to convict Cullen of attempted first degree murder, the jury must find "conduct intended or known to cause the death of Robin Saya and Carolina Ching in the same incident" did not omit a material element of the offense and was not otherwise defective.[13]

B. *The Jury Was Adequately Informed That A Guilty Verdict As To The Charge of Attempted First Degree Murder Precluded Guilty Verdicts As To The Charges Of Second Degree Murder And Attempted Second Degree Murder.*

The circuit court instructed the jury that *[i]f and only if* you find ... [Cullen] not guilty in Count One of the Offense of Attempted Murder in the First Degree; or if you are unable to reach a unanimous verdict as to this offense, then you must consider whether [Cullen] is guilty or not guilty in Counts [T]wo and Three of the Offenses of Murder in the Second Degree and Attempted Murder in the Second Degree.

(Emphasis added.) Accordingly, there seems to be no factual support for Cullen's contention on appeal that the instructions did not adequately inform the jury that a guilty verdict as to Count One precluded a guilty verdict as to Counts Two and Three. *See Briones II,* 74 Haw. at 471–72, 848 P.2d at 980 (Levinson, J., concurring).

■■■■ Cullen offers no authority for his assertion that the "if and only if" language indicates that the second degree murder charges were treated as included offenses of attempted first degree murder. While this language is often used in instructing juries about included offenses, that fact in no way detracts from the usefulness of the mode of expression, "If and only if not A, then B," to express the concept of mutually exclusive

---

**13.** It is noteworthy that, in *Briones II,* we held that the trial court had "sufficiently instructed the jury regarding the elements of the individual counts" where the instructions, in relevant part,

were: "The defendant, Isagani P. Briones, shot Jessie Peralta and Floracindo Queja, Jr. *in the same incident.*" *Briones II,* 74 Haw. at 450, 848 P.2d at 971 (emphasis in original).

conditions. Viewing the instructions "in the light of the entire proceedings," the jury could not have misapprehended the mutually exclusive nature of the charges against Cullen; even the prosecutor, in his closing argument, stressed that Cullen could not be convicted of all three of the murder/attempted murder charges against him, but, rather, that the jury was required to choose between an attempted first degree murder conviction, on the one hand, and convictions of second degree murder and attempted second degree murder, on the other.

Moreover, inasmuch as Cullen was convicted only of attempted first degree murder and the jury did not reach the second degree murder charges, the verdict could not have reflected inconsistent factual findings, as in *Briones.* From the verdict, we can only infer that the jury fully understood that a conviction of the charge of attempted first degree murder precluded conviction of the second degree murder charges. We therefore hold that the allegedly "defective" jury instruction was in no way prejudicially insufficient, erroneous, inconsistent, or misleading.

C. *The Absence Of The Phrase "Under The Circumstances As The Defendant Believed Them To Be" Does Not Render The Instructions Regarding Attempt Prejudicially Defective.*

■ The jury instructions regarding attempt were drawn from HRS § 705–500(2), which provides:

*When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.*

(Emphases added.) We have previously ruled that this statute "set[s] forth with reasonable clarity all of the essential elements of attempt liability." *State v. Moore,* 82 Hawai'i 202, 216, 921 P.2d 122, 136 (1996). Cullen's reliance on *Kinnane, supra,* for the contrary

position is misplaced, inasmuch as Kinnane was charged under HRS § 705–500(1)(b), *see supra* note 1, which governs attempts to commit offenses wherein the result of the actor's conduct is *not* a material element. *See Kinnane,* 79 Hawai'i at 52 n. 11, 53, 897 P.2d at 979 n. 11, 980. By contrast, HRS § 705–500(2) applies directly to attempted murder, wherein "causing a particular result," *i.e.,* the result of the actor's conduct, *is* a material element.

■ Assuming *arguendo,* however, that the jury instructions should have included the limitation "under the circumstances as the defendant believed them to be," the jury was, in fact, instructed that "[a] person acts intentionally with respect to attendant circumstances when *he is aware of the existence of such circumstances or believes or hopes that they exist.*" (Emphasis added.) In any event, Cullen's argument on this point is less than compelling when considered in light of the fact that his defense focused upon an attempt to establish an alibi and the theory that he had been mistakenly identified. Cullen offered no evidence of a misperception of the circumstances surrounding the shootings that would have precluded criminal liability. Accordingly, we hold that the jury instructions were not prejudicially insufficient, erroneous, inconsistent, or misleading in this respect.

D. *The Court's Failure To Repeat The Definition Of The Phrase "Substantial Step" When It Instructed The Jury Regarding Attempted Murder In The Second Degree Was Not Prejudicial Error.*

Cullen's final argument is that, having qualified the phrase "substantial step," in accordance with the language of HRS § 705–500(3), *see supra* note 1, after giving the instruction regarding attempted first degree murder, the circuit court was required to repeat the qualification in connection with the instruction regarding attempted second degree murder and that its failure to do so constituted prejudicial error requiring reversal pursuant to this court's holding in *State v. Brighter,* 63 Haw. 105, 108–09, 621 P.2d 381, 382 (1980). We disagree.

In *Brighter*, the trial court erred because, over the defendant's objection, it refused to give *any* instruction qualifying the phrase "substantial step." In this case, however, the necessary instruction was given. Cullen offers no support for his position that the definition must be repeated in conjunction with each of several attempt counts with which a defendant is charged,, and, on the facts of this case, his position is untenable. The applicable standard of review requires us to determine "whether there is a reasonable possibility that [the alleged] error might have contributed to conviction." When read and considered as a whole, the jury instructions reveal no basis for concluding that the jury could reasonably have interpreted the phrase "substantial step" to have a different meaning in the context of attempted first degree murder than it had when applied to the charge of attempted second degree murder.

Finally, Cullen fails to show that he was in any manner prejudiced by the circuit court's failure to repeat its instruction regarding the phrase "substantial step." "We presume that the jury followed the [circuit] court's instructions and first considered the evidence with regard to the Attempted [first degree] Murder charge." *Holbron*, 80 Hawai'i at 46, 904 P.2d at 931. The jury was instructed to consider the charges of second degree murder and attempted second degree murder "if and only if" it found Cullen not guilty of attempted first degree murder. Inasmuch as the jury reached a unanimous guilty verdict as to the charged offense of attempted first degree murder, it could not have reached, must less considered, the allegedly defective instructions pertaining to attempted second degree murder. Accordingly, there is no reasonable possibility that this alleged "error" contributed to Cullen's conviction. We therefore hold that the omission of multiple instructions qualifying the phrase "substantial step," if error at all, was clearly harmless beyond a reasonable doubt.

As the foregoing analysis demonstrates, it is apparent, and we so hold, that the instructions given to the jury "adequately apprised [it], in easily understandable language, [of] the law to be applied in its deliberation."

*See State v. Kaiama*, 81 Hawai'i 15, 27, 911 P.2d 735, 747 (1996). Accordingly, Cullen's arguments that they were prejudicially defective are without merit.

### E. *The Cross-Appeal*

In its cross-appeal, the prosecution challenges the sentencing court's application of HRS § 804–4, alleging that the court erred in its rulings: (1) that, in this appeal, Cullen raised a substantial question of law, which, if decided in Cullen's favor, might result in a reversal or an order for a new trial of *all* the counts on which imprisonment had been imposed; (2) that Cullen's medical condition provided clear and convincing evidence supporting the conclusion that he did not pose a flight risk; (3) that the prosecution did not present any evidence in the hearing on the motion, but relied, instead, upon the records and files in this case; and (4) that the prosecution's position that, because Cullen was convicted of a serious offense, he was, therefore, dangerous, was inconsistent with the provisions and intent of HRS § 804–4.

Our affirmance of Cullen's conviction moots the prosecution's points on cross-appeal. However, this court has long recognized the exception to the mootness doctrine that arises with respect to matters affecting the public interest *See, e.g., Mahiai v. Suwa*, 69 Haw. 349, 356, 742 P.2d 359, 365 (1987); *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87–88, 734 P.2d 161, 165–66 (1987); *Wong v. Board of Regents*, 62 Haw. 391, 395, 616 P.2d 201, 204 (1980). Hence, we entertain the cross-appeal pursuant to the statutory authority granted by HRS § 641–13(5), which provides that "[a]n appeal may be taken by and on behalf of the State ... in all criminal cases ... [f]rom a ruling on a question of law adverse to the State where the defendant was convicted and appeals from the judgment[.]" *See State v. Fukusaku*, , 85 Hawai'i 462, 490–92, 946 P.2d 32, 60–62 (1997).

1. *This court looks to federal case law construing the federal Bail Reform Act, 18 U.S.C. § 3143 (1982), for guidance in interpreting HRS § 804–4.*

The current text of HRS § 804–4, as amended, had its genesis in 1980 as H.B. No.

2558–80, later enacted as Act 242. *See* 1980 Haw. Sess. L. Act 242, § 3 at 427–28. As section 1 of Act 242 makes clear, the legislature's purpose in adopting this legislation was to reform the bail system in order to correct "extensive abuse of the privilege of bail pending appeal and blunting of the deterrent effect of punishment due to delays caused by appeals." As codified by Act 242, HRS § 804–4 did not permit the release of a convicted criminal defendant sentenced to a term of imprisonment under any conditions. *See id.;* Hse. Stand. Comm. Rep. No. 1038, in 1987 House Journal, at 1603. In 1987, acknowledging that total prohibition of bail pending appeal might result in injustice in some cases, the legislature amended HRS § 804–4 in order to accord sentencing courts the discretion to grant release on bail pending appeal when appropriate, pursuant to standards imported from the federal Bail Reform Act. Hse. Stand. Comm. Rep. No. 1038, in 1987 House Journal, at 1603.

 Hence, the circuit court in the present case correctly looked to *United States v. Miller,* 753 F.2d 19 (3d Cir.1985), for guidance in the interpretation of HRS § 804–4. We agree with the parties that *Miller* is controlling and, therefore, hold that *Miller* establishes the standards to be employed in applying the criteria set forth in HRS § 804–4 for determining when an individual, convicted of a felony and sentenced to a term of imprisonment, may be released on bail pending an appeal of the conviction.

 Accordingly, in making a decision whether to grant or deny a request for post-conviction bail under the criteria established by HRS § 804–4, a sentencing court must,

after first making the findings as to flight, danger, and delay, . . . determine that the question raised on appeal is a "substantial" one, i.e. it must find that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful. This represents a marked change in the inquiry into the merits in the context of a bail determination, since the 1966 act only required the court to determine whether the issue was "frivolous," *see* 18

U.S.C. § 3148 [ (1982) ] (repealed by 1984 Act).

After the court finds that the question on appeal meets the new "substantial" test, it must determine whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial. The statutory language requiring a finding that the appeal "raises a substantial question of law or fact likely to result in reversal or an order for a new trial" cannot be read as meaning . . . that the [trial] court must conclude that its own order is likely to be reversed.

In the first place, such a reading would render language in the statute surplusage because every question that is likely to be reversed must by definition be "substantial[."] In the second place, we are unwilling to attribute to Congress the cynicism that would underlie the provision were it to be read as requiring the district court to determine the likelihood of its own error. A [trial] judge who, on reflection, concludes that s/he erred may rectify that error when ruling on post-trial motions. Judges do not knowingly leave substantial errors uncorrected, or deliberately misconstrue applicable precedent. Thus, it would have been capricious of [the legislature] to have conditioned bail only on the willingness of a trial judge to certify his or her own error.

· For a similar reason, the phrase *"likely to result in reversal or an order for a new trial"* cannot reasonably be construed to require the [trial] court to predict the probability of reversal. The . . . courts are not to be put in the position of "bookmakers" who trade on the probability of ultimate outcome. Instead, that language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal. A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. A court may find that reversal or a new trial is "likely" only if it concludes that the question is so integral to the merits of the conviction on

which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.

. . . .

In summary, then, under the criteria established by the 1984 Act[,] which the *defendant* now has the burden of proving if s/he seeks bail pending appeal, the court must find:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is *likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.*

*Miller,* 753 F.2d at 23–24 (some emphasis added and some in original).

2. *Where a favorable decision on appeal could not result in reversal or an order for a new trial on all of the counts as to which a sentence of imprisonment has been imposed, the statutory requirements for release on bail pending have not been met.*

■ Applying the *Miller* analysis to the facts of this case, it is clear that the circuit court abused its discretion in granting Cullen's motion for release on bail pending appeal, inasmuch as its decision was based upon an incorrect construction of HRS § 804-4. *All* of the four conditions set forth in *Miller* must be met in order for an individual convicted of a criminal offense to qualify for release on bail pending appeal. Failure to meet even one of them is preclusive. *See Miller,* 753 F.2d at 24.

■ Cullen was sentenced to terms of imprisonment for his convictions in connection with both the attempted first degree murder charge, which he appeals here, and the charge of possession of a firearm by a

person convicted of certain crimes, which is not being appealed. In its order, the circuit court indicated that the substantial question providing the basis for its decision to grant Cullen's motion for bail pending appeal was "the question of whether the court gave the jury an erroneous instruction as to the elements of the offense of Attempted Murder in the First Degree." Because the question deemed substantial was not related to *both* charges, we hold that, as a matter of law, the statutory criteria for bail pending appeal were not met as to the charge of possession of a firearm by a person convicted of certain crimes, and bail should have been denied. *See Miller,* 753 F.2d at 24; *State v. House,* 121 N.M. 784, 918 P.2d 370, 378 (App.), *cert. denied,* 121 N.M. 676, 916 P.2d 1343 (1996).

We recognize that the practical implication of this holding is that a sentencing court may not grant a convicted criminal defendant's motion for bail pending appeal unless and until the defendant has identified the points of error to be raised on appeal so as to permit a determination as to whether the appeal has the potential of vacating all of the prison sentences imposed. This has, heretofore, always been necessary in order to satisfy the requirement that an appeal present a substantial question. We wish to clarify, however, that movants must meet the standards established by *Miller* in making the requisite showing.

Having determined that Cullen has failed to meet at least one of the statutory requirements for bail pending appeal, it is not necessary for this court to address the prosecution's other points of error, and we decline to do so.

## IV. CONCLUSION

For the foregoing reasons, we affirm Cullen's conviction of and sentence for attempted murder in the first degree. The matter of bail has already been remanded to the circuit court with instructions to issue mittimus forthwith.[14]

---

**14.** On July 23, 1997, during oral argument in

this case, the prosecution orally moved to revoke

Cullen's bail pending appeal, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) 9(b), which provides in relevant part that "if an appeal is pending, a motion ... for modification of the conditions of release ... may be made to the appellate court before which the appeal is pending...." Pursuant to HRAP 2, which permits this court to suspend the HRAP "[i]n the interest of expediting decision," this motion was granted in an order filed July 23, 1997. Accordingly, the bail matter was remanded at that time, with instructions to the circuit court to issue mittimus forthwith, while this court retained jurisdiction to decide the appeal and issue an opinion in the appeal and cross-appeal.