12 P.3d 1250

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Sky LEWIS, Defendant–Appellant.**

**No. 22901.**

Intermediate Court of Appeals of Hawai'i.

Sept. 25, 2000.

Certiorari Granted Nov. 8, 2000.

Mimi DesJardins, on the briefs, for Defendant–Appellant.

Benjamin M. Acob, Deputy Prosecuting Attorney, County of Maui, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., and WATANABE, J., and LIM, J., dissenting.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Sky Lewis (Lewis) appeals the family court's September 14, 1999 Judgment of Probation finding him guilty of Abuse of a Family or Household Member, Hawai'i Revised Statutes § 709–906, and sentencing him to (1) probation for one year, subject to terms and conditions, including ten days in jail, eight of which were suspended, and to pay restitution; and (2) ordering him to pay $50 to the Criminal Injuries Compensation Fund. We affirm.

## BACKGROUND

At a bench trial, Plaintiff–Appellee State of Hawai'i (State) called the alleged victim to testify and then rested. Lewis called a police officer and himself to testify and then rested. The State then called the alleged victim to testify in rebuttal solely with respect to the tape of his call to 911.

The alleged victim testified that on June 28, 1999, Lewis physically hit him more than once without provocation. In contrast, Lewis testified in relevant part as follows:

A. I punched him to defend myself.

Q. And, where did you punch him?

A. In the face and hit his lip.

Q. Did you hit him or strike him anywhere else in the face?

A. No.

Q. Did you strike him more than once?

A. No.

With respect to the alleged victim's call to 911, Lewis testified in relevant part as follows:

Q. Did [the alleged victim] voluntarily hang up the phone or did you hang up the phone?

A. I was in the bedroom, [the alleged victim] was in the kitchen. I hung up my end of the phone. I can't hang up the phone call that he was going on in the kitchen. I don't understand.

Q. So you were on the phone with 911 too?

A. I picked up the phone.

Q. Oh. And you were speaking to 911?

A. Yes.

In rebuttal, after the 911 tape was played, the alleged victim testified in relevant part as follows:

Q. At the end of the tape when ... you're speaking with the 911 operator and there are still noises, can you explain to the Court what was happening at that point?

A. [Lewis] ripped the phone out of my hand and pushed me and hung up the phone.

## RELEVANT PRECEDENT

The Hawai'i Supreme Court's opinion in *Tachibana v. State*, 79 Hawai'i 226, 900 P.2d 1293 (1995), requires that before the defendant waives his or her constitutional right to testify, the trial court must conduct a colloquy with the defendant and obtain the defendant's on-the-record voluntary, knowing, and intelligent waiver of that right (*Tachibana* Requirement).

## POINT ON APPEAL

Lewis contends that "[t]he trial court committed plain error when it failed to engage LEWIS in an on-the-record colloquy with respect to whether he knowingly, intelligently and voluntarily waived his right *not* to testify at his trial." (Emphasis in original.)

## DISCUSSION

█ A defendant in a criminal case has certain rights unless he or she decides to waive them. In Hawai'i, before a defendant waives certain rights, the trial court must conduct a colloquy to insure that the waiver is made voluntarily, knowingly, and intelligently. Examples are:

1. Right to testify (*Tachibana, supra* ).

2. Right to an included offense instruction (*State v. Kupau,* 76 Hawai'i 387, 395–96 n. 13, 879 P.2d 492, 500–01 n. 13 (1994)).

3. Right to trial by jury (*State v. Young,* 73 Haw. 217, 220–21, 830 P.2d 512, 514 (1992); and *State v. Ibuos,* 75 Haw. 118, 121, 857 P.2d 576, 578 (1993)).

4. Right to counsel (*State v. Vares,* 71 Haw. 617, 622–23, 801 P.2d 555, 558 (1990); *State v. Hoey,* 77 Hawai'i 17, 33, 881 P.2d 504, 520 (1994); and *State v. Merino,* 81 Hawai'i 198, 219, 915 P.2d 672, 693 (1996)).

5. Rights lost by pleading guilty or nolo contendere (Hawai'i Rules of Penal Procedure Rule 11; *Conner v. State,* 9 Haw.App. 122, 126, 826 P.2d 440, 442 (1992)).

█ The primary reason for the pre-waiver colloquy requirement is the difficulty in determining at a post-conviction relief hearing whether such a waiver occurred and the resulting waste of judicial resources. *Tachibana,* 79 Hawai'i at 234, 900 P.2d at 1301.

The United States Constitution affords a Fifth Amendment right not to "be compelled in any Criminal Case to be a witness against himself[.]" Similarly, the Hawai'i Constitution, affords an Article I, Section 10, right not to "be compelled in any criminal case to be a witness against oneself." In other words, both constitutions assure a defendant in a criminal case the right to remain silent.

In *Tachibana,* the defendant did not testify. He waived his right to testify, not his right to remain silent. The Hawai'i Supreme Court ruled in relevant part as follows:

[A defendant's] right to testify in his [or her] own defense is guaranteed by the constitutions of the United States and Hawaii [Hawai'i] and by a Hawaii [Hawai'i] statute.

. . . .

*State v. Silva,* 78 Hawaii [Hawai'i] 115, 122–23, 890 P.2d 702, 709–10 (App. 1995) . . . .

. . . [I]n order to protect the right to testify under the Hawaii [Hawai'i] Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify.[7] . . .

. . . .

. . . [T]he ideal time to conduct the colloquy is immediately prior to the close of the defendant's case. Therefore, whenever, [*sic*] possible, the trial court should conduct the colloquy at that time.[9]

---

[7] In conducting the colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify and should limit the colloquy to advising the defendant

that he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, [and] that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her]. In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.

*State v. Neuman,* 179 W.Va. 580, 585, 371 S.E.2d 77, 82 (1988) (quoting *People v. Curtis,* 681 P.2d at 514).

[9] Of course, the trial court judge cannot independently foresee when the defense is on the verge of resting and conduct the colloquy at that precise moment. Consequently, the trial courts will require the cooperation of defense counsel to enable them to conduct the colloquy immediately prior to the close of the defendant's case.

Furthermore, although the ultimate colloquy should be conducted after all evidence other than the defendant's testimony has been received, it would behoove the trial court, prior to the start of trial, to (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her .to ensure that the decision not to testify is the defendant's own decision. Such an early warning would reduce the possibility that the trial court's colloquy could have any inadvertent effect on either the defendant's right not to testify or the attorney-client relationship.

*Id.* at 232, 236–37, 900 P.2d at 1299, 1303–04 (footnote omitted).

█ In contrast to *Tachibana,* Lewis testified. Lewis contends that *Tachibana* also requires that before the defendant waives his or her constitutional right to remain silent, the trial court must conduct a colloquy with the defendant and obtain an on-the-record voluntary, knowing, and intelligent waiver of that right. Lewis further contends that the court failed to perform its duty in his case.

The *Tachibana* Requirement mandates a pre-silence colloquy. Lewis presents the question whether a pre-testimony colloquy is likewise mandated.

In *People v. Mozee*, 723 P.2d 117, 124 (Colo.1986), the Colorado Supreme Court decided that the answer is no and stated, in relevant part, as follows:

Several considerations influence our decision to reach a conclusion that contrasts with the requirement imposed in [*People v. ]Curtis* [, 657 P.2d 990 (Colo.App.1982), *aff'd*, 681 P.2d 504 (Colo.1984), ]of a mandatory advisement of the right to testify whenever a defendant chooses to remain silent. First, the need for an advisement when a defendant expresses the intention to testify is lessened in part by the fact that the court is already required to advise the defendant, at the defendant's first appearance, of the constitutional right to remain silent.... It is also possible, even likely, that any particular defendant has received one or more such advisements from law enforcement officials during the course of a criminal investigation. These advisements stand in contrast to the situation in *People v. Curtis*, for a defendant is unlikely to receive any pre-trial judicial advisement of his constitutional right to testify, or of the critically important fact that the ultimate decision whether to testify must be made by him and not his counsel.

It is true that in any of these pre-trial advisements concerning the right to remain silent, the defendant likely does not receive a full explanation of the many attributes of that right. It is a duty of a defense counsel, however, to ensure that the defendant has been advised of the full array of matters associated with the basis constitutional right to remain silent to the extent that they relate to the defendant's circumstances. This includes the benefits flowing from an exercise of that right at trial and the consequences stemming from a waiver of the right. Here again, we find a contrast with the situation in *Curtis*. Underlying our concern in *Curtis* was the belief, justifiable given the facts in that case, that a defense attorney, acting in a good faith and with a zeal to prevent the client's conviction, might overbear a defendant's desire to testify. We noted in *Curtis* that a defendant's desire to tell his side of the story may be of overriding importance to him even though, viewed objectively, the defendant's testimony may increase the likelihood of conviction. We also observed in *Curtis* that the opportunity of the defendant to place himself and his own viewpoint before the trier of fact is necessary to legitimate the outcome of the trial. Although sensitivity to these factors is required of defense counsel, *see* EC 7–8, Code of Professional Responsibility, we perceive a real risk that without a judicial advisement, the truly personal considerations incident to a defendant's decision not to testify will be unduly minimized by counsel in an effort to assure the best chance of acquittal. For this reason, it is necessary that the trial court intervene to make sure that the defendant understands that he has the right to testify, that he understands the real consequences of deciding to testify or not to testify, and that he and not his counsel is ultimately responsible as to whether the defendant testifies.

Given the independent advisement by the court to the defendant concerning his right to remain silent, and given the practical realities of defense trial strategy, we do not perceive the same level of tension to exist between a defendant and defense counsel when a defendant decides to take the stand as concerned us in *Curtis* when a defendant elects not to testify. We think it is highly unlikely that any defendant testifies only because a defense counsel overrides the defendant's specific desire not to testify. We also think it unlikely that a competent defense counsel would allow a defendant to take the stand without a full explanation of the right to remain silent and the possible consequences of waiving that right. We also view as most improbable the notion that any defendant expects to be able to testify without being subject to cross-examination. Thus, we see less need for intervention by the trial court and an on-the-record advisement concerning these matters before the defendant testifies....

For these reasons, we conclude that the absence of an advisement to Mozee by the trial court of the right not to testify does

not automatically render his waiver invalid or require, in and of itself, that a new trial be granted. Mozee does not otherwise contest the validity of his waiver.

*Mozee*, 723 P.2d at 124–5 (citations and footnotes omitted).

As noted above, the last sentence of *Tachibana*'s footnote 7 states that "the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right." The words "should also be advised" do not mandate a colloquy. This is especially true in light of the use of the words "must conduct a colloquy" in the *Tachibana* Requirement.

Similarly, the wording of *Tachibana*'s footnote 9 quoted above first mentions both the "personal right to testify or not to testify" but then states that if the defendant

has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision. Such an early warning would reduce the possibility that the trial court's colloquy could have any inadvertent effect on either the defendant's right not to testify or the attorney-client relationship.

The concern for "any inadvertent effect" is limited to "the defendant's right not to testify." This limitation implies a significantly lesser concern for the defendant's right to testify. This is especially true in light of the use of the words "must conduct a colloquy" in the *Tachibana* Requirement.

The offense occurred on June 28, 1999. The Complaint was filed on July 7, 1999. The July 9, 1999 Order Pertaining to Bail states in relevant part:

IT IS HEREBY ORDERED:

. . . .

☑ that bail in this case be set aside and defendant is released on his own recognizance.

. . . .

Other bail provisions shall be effective as follows:

Bail posted is ordered returned to the person posting such bail.

Other than the implications of the July 9, 1999 Order Pertaining to Bail, there is no indication that Lewis was advised prior to or

during the course of the proceedings or otherwise knew that he had a right not to testify. However, we are not dealing with the trial court's failure to do something it "must" have done. We are dealing with the trial court's failure to do something it "should" have done, *i.e.*, conduct a pre-testimony colloquy. The resulting question is whether the trial court committed plain error when it did not conduct a pre-testimony colloquy.

Hawai'i Rules of Penal Procedure Rule 52(b) states that "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (citing *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997)).

 The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory*, 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (citing *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998)).

This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*Vanstory*, 91 Hawai'i at 42, 979 P.2d at 1068 (citing *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74–75 (1993)).

Lewis has not contended and there is no indication on the record that his waiver of his right to remain silent was not voluntary, knowing, and intentional. Lewis has not stated how his testimony harmed his case and there is no indication in the record that it was harmful to his case. The fact that the court believed the alleged victim and did not believe Lewis does not mean that Lewis's testimony harmed his case. Therefore, the record shows a harmless error rather than a plain error.

**314**

## CONCLUSION

Accordingly, we affirm the family court's September 14, 1999 Judgment of Probation.

### Dissenting Opinion of LIM, J.

I respectfully dissent for the reasons set forth in Justice Nakayama's concurring and dissenting opinion in *Tachibana v. State*, 79 Hawai'i 226, 241, 900 P.2d 1293, 1308 (1995):

> The right not to testify is among the fundamental and personal rights recognized by the Constitution. If anything, one would expect the right not to testify to be more zealously guarded than the right to testify. An uninformed defendant probably expects to testify and may be unaware how strongly the Constitution protects his [or her] right not to testify. Yet the trial court has no duty to make a sua sponte inquiry to advise the defendant of his [or her] right not to testify and to ensure that its waiver was knowing and intelligent. Rather, the defendant by taking the stand waives this significant right even though the record gives no explicit assurance that this waiver was knowing and intelligent.

(quoting *United States v. Martinez*, 883 F.2d 750, 756–57 (9th Cir.1989)) (citations omitted).

Hence I would require a *"Tachibana* colloquy" where the defendant chooses to testify, as well as where the defendant chooses not to testify. Also analogously, I would find a violation of the right to remain silent based solely on the lack of such a colloquy. *Cf. Tachibana*, 79 Hawai'i at 237–38, 900 P.2d at 1304–5 ("[i]f our holding in this case were to apply retrospectively, we would be compelled to affirm the circuit court's conclusion that Tachibana's right to testify was violated based solely on the lack of such a colloquy").

In this case, we have no real way of knowing the result had Lewis chosen to remain silent as a result of a personal colloquy with the trial court regarding his right to remain silent. We do know, however, that he testified to hitting the complaining witness, thus conceding the *actus reus* of the offense, albeit in the context of a claim of self-defense. Under the circumstances, I cannot conclude that the lack of such a colloquy was harmless beyond a reasonable doubt, *cf. Tachibana*, 79 Hawai'i at 240, 900 P.2d at 1307 ("[o]nce a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt") (citations omitted), and hence would vacate the family court's judgment and remand for a new trial.